UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN L., | ) |
| Plaintiff, | ) No. 19-cv-6047 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Steven L.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 15] is GRANTED and the Commissioner's motion for summary judgment [dkt. 28] is DENIED. This case is remanded for proceedings consistent with this Memorandum Opinion and Order.

I. **Background**

    a. **Procedural History**

Plaintiff was born in 1966, making him 49 years and 6 months old at his onset date; he subsequently changed age categories to an individual closely approaching advanced age. [R. 29.] Plaintiff applied for Disability Insurance Benefits on February 10, 2016, alleging a disability onset date of February 1, 2016. [R. 193-99.] On August 14, 2017, after an administrative hearing, Administrative Law Judge ("ALJ") Roxanne J. Kelsey issued an unfavorable decision. [R. 20-30.] Plaintiff requested Appeals Council review, which was denied on October 10, 2018. [R. 1-3.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff filed the instant action on September 9, 2019, seeking

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] Plaintiff has filed an Opening Brief, which the Court construes as a motion for summary judgment [dkt. 15].

review of the Commissioner's decision. [Dkt. 1.]

    **b.    The ALJ's Decision**

On July 25, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 20-30.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of February 1, 2016. [R. 22.] At Step Two, the ALJ found that Plaintiff had the severe impairments of chronic liver disease; asthma; and neuropathy. *Id.* The ALJ determined that Plaintiff's affective disorder was a nonsevere impairment. [R. 22-24.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 24.]

Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations: occasional climbing, balancing, stooping, crouching, crawling, or kneeling; no more than occasional exposure to concentrated levels of fumes, odors, dusts, gasses, or poor ventilation; limited to simple, routine tasks characteristic of unskilled work. [R. 25-29.] At Step Four, the ALJ determined that Plaintiff was not capable of performing his past relevant work as a neurologist. [R. 29.] At Step Five, however, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 29-30.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 30.]

**II.    Social Security Regulations and Standard of Review**

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide

questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and her conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

## III. Discussion

Among other claims, Plaintiff argues the ALJ's analysis of his subjective symptoms (specifically his daily activities) was legally insufficient. The Court agrees. Additionally, Plaintiff complains that the ALJ's analysis of his wife's testimony was flawed. The Court also agrees. The Court does not reach the other bases of error in the ALJ's decision alleged by Plaintiff.

### a. Plaintiff's Subjective Symptoms/Daily Activities

In reviewing the ALJ's treatment of Plaintiff's subjective symptoms, the Court must determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The substantial evidence standard requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* ALJs are instructed by the regulations to consider the extent to which a claimant's subjective symptoms are corroborated by the record. *See* 20 C.F.R. § 404.1529. The ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR16-3p. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;
(ii) Location, duration, frequency, and intensity of pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) Type, dosage, effectiveness, and side effects of any medication;

      (v) Treatment, other than medication, for relief of pain or other symptoms;
      (vi) Other measures taken to relieve pain or other symptoms;
      (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3). An individual's statements about the intensity and persistence of pain may not be disregarded because they are not substantiated by objective medical evidence. SSR16-3p. The ALJ must consider the entire case record, and the ALJ's decision must contain specific reasons for the finding. *Id.*

      The Court finds the ALJ neglected to adequately explain how Plaintiff's ability to perform his daily activities undermined his allegations of disability. The Seventh Circuit has consistently cautioned ALJs to not place "undue weight" on a claimant's household activities in evaluating the claimant's ability to perform work outside the home. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (stating that "an ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time"); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (a claimant's "ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace"). While an ALJ can consider a claimant's daily activities in her subjective symptom analysis, her evaluation "must be done with care" because these abilities say little about how Plaintiff could manage the requirements of the workplace. *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013); *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). A person performing such tasks has flexibility in scheduling, can receive help and is not held to a minimum standard of performance, unlike an employee. *Id.* (citing *Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012)).

      Here, the ALJ noted that Plaintiff "admitted activities of daily living including driving, using a computer, and taking care of his children" and concluded that Plaintiff's "ability to participate in such activities undermines his allegations of disabling functional limitations." [R. 26.] However, the "mere listing of daily activities does not establish that a claimant does not suffer disabling pain and is capable of engaging in substantial gainful employment." *Nelson v. Colvin*, 2016 WL 337143, at *6 (N.D. Ill. Jan. 27,

4

2016). To wit, in the instant matter, the ALJ took these meager activities quite out of context and then extrapolated them into Plaintiff being able to sustain a light-exertion full-time job.

Specifically, the ALJ ignored the difficulties Plaintiff experiences when he performs these basic activities. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) (finding error when the "ALJ ignored [claimant's] qualifications as to *how* [s]he carried out" daily activities) (emphasis in original). For instance, Plaintiff testified that while he is able to drive, he has problems sitting without a break on trips over 60 minutes, so his wife mainly drives. [R. 42-43]. Additionally, Plaintiff's wife also testified that Plaintiff often forgets where he is going, even in the case of short distances and routine locations [R. 56-57]. Plaintiff even noted in his Function Report that on a few occasions, he could not remember the route to his office while driving. [R. 315.] As to computer usage, the Court would characterize Plaintiff's testified usage as very basic, in that Plaintiff "ha[d] used a computer for shopping or Amazon or something like that." [R. 44.] In fact, while it seems Plaintiff used to pay household bills online (*e.g.*, taxes, electric bills, credit card bills), he had to stop doing it because he would forget to pay the bills; his wife had to take over that household activity because Plaintiff could not do it (in fact, Plaintiff's wife testified that Plaintiff "thought he was paying them, but he wasn't paying them" and the family would incur late fees). [R. 44, 54-55.] As to "taking care of his children," Plaintiff's 17-year-old son and 15-year-old daughter live with him and his wife. [R. 41.] Plaintiff testified that his wife will help the children with schooling when necessary, and that he doesn't help the children with their homework because "I think I wouldn't comprehend the material at all."[3] [R. 43, 48.] There is no further discussion at the Administrative Hearing concerning Plaintiff caring for his teenage children in any manner.

This is not to say that a claimant's activities of daily living can never fully undermine their allegations of disabling functional limitations, but the ones listed by the ALJ here clearly do not (*i.e.*,

---

[3] The fact Plaintiff testified he "thinks" he wouldn't comprehend the material instead of phraseology to the effect he "doesn't comprehend the material" comports with the fact Plaintiff is somewhat more hands-off when it comes to his children's school work, as it suggests to the Court he hasn't tried to help with his children's homework and failed, but rather that he hasn't tried to help.

5

driving, using a computer, and taking care of his children). The ALJ failed to properly articulate her reasoning for rejecting Plaintiff's subjective statements.[4] Simply listing Plaintiff's activities of daily living (particular these meager ones), without more, is not sufficient to contradict his allegations of disability. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (it is insufficient for ALJ to merely list claimant's daily activities as "substantial evidence" that claimant does not suffer disabling pain). Thus, the ALJ's decision in this respect is not supported by substantial evidence, even when viewed deferentially; no reasonable person could agree that the ALJ's determination provides a sound explanation for finding Plaintiff not disabled. *Richardson*, 402 U.S. at 401 (substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion."). Moreover, the Court finds the ALJ placed "undue weight" on these activities when evaluating Plaintiff's ability to perform work outside the home; Plaintiff's ability to "struggle through [driving, using a computer, and taking care of his 15- and 17-year-old children] does not mean []he can manage the requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d at 712; *Moss*, 555 F.3d at 562; *Spiva*, 628 F.3d at 352. Just as in *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir.2006), where "[t]he administrative law judge's casual equating of household work to work in the labor market cannot stand," here, the ALJ's finding that driving, using a computer, and taking care of his teenage children equates to Plaintiff having the necessary "physical and mental abilities…for obtaining and maintaining employment" [R. 26] also cannot stand. Both of these errors warrant remand.

The Court finds similarly problematic the ALJ's reliance on Plaintiff's "description of his activities of daily living" to support her opinion that Plaintiff experienced only mild mental impairments in all

---

[4] This is not to say the ALJ failed to note inconsistencies between other of Plaintiff's claims and objective medical evidence (*see* dkt. 32 at pp. 6-7), but the Court specifically faults the ALJ for her unduly weighted analysis of Plaintiff's activities of daily living, suggesting that Plaintiff could manage the requirements of the workplace based on his (contradicted) abilities to drive, use a computer, and take care of his teenage children. The fact the Seventh Circuit has held that "[t]he failure to recognize the[] differences [between activities of daily living and activities in a full-time job] is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases," *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.2012), suggests the ALJ's decision in this regard is grounds for remand despite having provided some other evidence of alleged inconsistencies in the record, even under an extremely deferential review applicable to subjective symptom evaluations.

functional domains. The ALJ again relies on the aforementioned problematic activities, as well as unspecified activities falling under doing household chores; doing laundry; shopping; taking care of personal hygiene; taking care of his personal needs or taking medications without reminders; and driving his children to and from school. [R. 23.] Again, the Court finds the ALJ took impermissible liberties with extrapolating Plaintiff's testimony about these activities. As to "household chores," Plaintiff testified that laundry was the only household chore he performed and, even then, he "sometime[s brings] laundry to the machine, put them in the machine." [R. 41.] In the Function Report, Plaintiff additionally listed under household chores that he puts away laundry (once a week) and pulls weeds out (once a week in the summer). [R. 310.] As for household shopping, Plaintiff testified that his wife does the household shopping.[5] [R. 41.] As for taking care of personal hygiene, the only reference to this the Court can find is that when Plaintiff describes his daily activities, he noted that he takes a shower. [R. 309.] As to taking care of his personal or medication needs without reminders, the Court finds the record reflects the opposite – Plaintiff and his wife both testified that he actually does need reminders to go to appointments and take his medications, which the ALJ acknowledged at the hearing. [R. 44, 46, 49, 57-58.] Lastly, Plaintiff does either drop his children at school or pick them up, so this activity is an accurate statement by the ALJ. [R. 23, 309.]

It is plain from even a cursory review by the Court of Plaintiff's actual daily activities that there are significant gaps between the reality of how Plaintiff is able to complete these activities, the way the ALJ portrayed Plaintiff's engagement in these activities, and the broad conclusions the ALJ leapt to (both in terms of the subjective symptom analysis and with regards to the four areas of mental functioning) based on these meager activities. Thus, the ALJ's subjective symptom evaluation is clearly flawed. Therefore, remand is proper on this basis.

---

[5] Plaintiff's Function Report lists that for about 2 hours a week he will shop for groceries, medications, or household items wither by computer or in stores. [R. 311.] Plaintiff testified that he gets most of his medications delivered [R. 43], so it is probably fair to say that any in-store household shopping he does comprises about 1 hour a week.

On remand, the ALJ should more fully analyze Plaintiff's activities of daily living and whether they are in fact inconsistent with his disability claim, taking care to explain how his daily activities truly (or not) equates to the ability to perform work at a level necessary for competitive employment.

### b. Plaintiff's Wife's Testimony

As the Court has already decided to remand on the ALJ's analysis of subjective symptoms, the Court does not need to reach any other bases for remand. And yet, the short shrift given by the ALJ to Plaintiff's wife's testimony must be addressed.

The Court finds it wholly incredible that the ALJ assigns little weight to Plaintiff's wife's testimony because "she is not a medical professional nor versed in the standards of Social Security disability or with vocational factors." [R. 28.] This is simply not a justifiable reason to disregard lay witness testimony. As this Court has said before, "[i]t strains reason to think a family member would need medical training to testify to [their daily observations of Plaintiff], particularly since 'testimony such as this from family members and employers who were in a position to observe the claimant's symptoms and daily activities is competent and probative evidence.'" *Desiree B. v. Saul*, 2019 WL 6130814, fn. 10 (N.D. Ill. Nov. 19, 2019) (citing *Herron v. Comm'r of Soc. Sec.*, 788 F. Supp. 2d 809, 817 (N.D. Ind. 2011); 20 C.F.R. § 404.1529(a) & (c)(3); *Boiles v. Barnhart*, 395 F.3d 421, 424-26 (7th Cir. 2005); *Barnett v. Barnhart*, 381 F.3d 664, 668-70 (7th Cir. 2004); and *Godbey v. Apfel*, 238 F.3d 803, 809-10 (7th Cir. 2000)). "By definition, lay witnesses do not have medical training, but the regulations require ALJs to consider their statements." *Roque v. Colvin*, 2016 WL 1161292, at *5 (N.D. Ill. Mar. 22, 2016) (citing 20 C.F.R. § 404.1513(d)(4); 20 C.F.R. § 404.1545(a)(3)). Simply put, "the submission of non-medical statements would be essentially pointless if these lay witnesses had to be familiar with Social Security disability standards." *Kenneth S. v. Saul*, 2020 WL 419418, at *5 (N.D. Ill. Jan. 27, 2020). Lack of familiarity with the Social Security Administration's standard for disability is not a valid reason to accord little weight to the statement of a lay witness. *Id.* The ALJ has done precisely that with Plaintiff's wife's statements in the instant matter,

which is cause for remand.

Additionally, the Court notes that it seems the ALJ was prepared to disregard Plaintiff's wife's testimony even at the Administrative Hearing, as the Court would describe the ALJ's treatment of Plaintiff's wife's testimony as nothing short of rushed. While the Court can understand the SSA's need to keep Administrative Hearings on a schedule, Plaintiff's wife was asked a total of only five substantive questions by the ALJ, and then Plaintiff's counsel was allowed a single question before the ALJ summarily moved on to the vocational expert. [R. 57.]

Despite the rushed nature of this testimony, Plaintiff's wife was still able to make a brief record concerning some of Plaintiff's daily functioning as she observed it, asserting (as the ALJ noted) that Plaintiff "is forgetful at times." [R. 28, 54-55.] Plaintiff's wife also testified she had to take over household bill payment due to this forgetfulness [R. 54-55]. She further testified that Plaintiff would become irritable at reminders [R. 55, 58]; Plaintiff was exhausted and unable to function at work, even reporting to her he'd forgotten how to use neurology equipment he'd been using for 20 years [R. 55]; Plaintiff would forget the driving route to destinations he'd been to numerous times [R. 56]; Plaintiff would be unable to drive for over an hour due to neuropathic pain in his feet, so he'd have to stop and walk around[6] [R. 57]; Plaintiff is really tired all the time, and needs to nap once or twice a day [*Id.*]; and that Plaintiff forgets to take his medications, so his wife reminds him both by dosing out his pills into containers and verbally reminding him [R. 57-58]. This testimony all corroborates Plaintiff's statements about his daily

---

[6] This evidence also contradicts the ALJ's opinion that Plaintiff's reports of a daily walk were seemingly inconsistent with his claims of fatigue. [R. 26 ("Although he reported continued fatigue, he engaged in exertional activities including walking on a daily basis.").] Additionally, when the ALJ highlighted how the consultative examiner "did not, however, observe any abnormalities of gait…" [R. 27], the ALJ implied a correlation between neuropathic pain and gait beyond what even the Seventh Circuit has noted as typical neuropathic pain. *See Engstrand v. Colvin*, 788 F.3d 655, fn. 2 (7th Cir. 2015) ("neuropathies can cause burning or sharp pain, a diminished capacity for physical sensation, an abnormal increase in sensitivity to touch, tingling skin ('falling asleep'), muscle weakness, ulcers, infections, and loss of reflexes, balance, coordination, temperature, and vibratory sense") (citations omitted). Not only is Plaintiff's wife's statement consistent with Plaintiff's testimony that walking sometimes helped with neuropathic pain, but as to his walks, Plaintiff testified he is usually okay to walk around the block. [R. 51-53.] Moreover, this collective testimony tends to support the notion that Plaintiff's gait might be normal on these short walks even though he may still be experiencing neuropathic pain, as the walking seems to relieve this pain.

functioning, and is indicative of a lesser level of functioning than recognized by the ALJ.

It is simply not proper for the ALJ to have disregard (and, perhaps, cut short) Plaintiff's wife's testimony about these subjects because Plaintiff's wife is not a medical professional nor versed in SSA disability standards. That is not the function of a lay witness such as Plaintiff's wife, and the ALJ has provided no proper grounds for discounting her testimony. Remand is necessary for a proper consideration of this lay witness testimony.

### c. Treating Source Statements

Finally, a note about the ALJ's treatment of Plaintiff's treating source statements. While it is true that Plaintiff handwrote these statements for his physicians' signatures, Plaintiff readily testified he drafted them after consultation with his physicians about the content thereof. The ALJ seems to take a dim view of this. In fact, the ALJ takes pains to point out that the forms were "completed in what appears to be the same handwriting" and that "[w]hen questioned closely at the hearing, the claimant stated that he had completed these forms for his doctors' signatures." [R. 28.] In reality, there was not the intense scrutiny the ALJ implies. Rather, Plaintiff *volunteered* he had handwritten the statements. [R. 39-40.] Moreover, the ALJ seems to have conveniently omitted from her opinion that Plaintiff drafted the statements after going over the content with his doctors.[7] While it is certainly an unusual situation for Plaintiff to have handwritten his own medical source statements in consultation with his doctors (the Court can find no other cases of this ilk), this is no specific reason to discount these statements. Plaintiff himself is a highly skilled physician, and perhaps understands better than the rest of the players here the time and effort of menial document preparation he may have been sparing his physicians after

---

[7] The entirety of the exchange about these statements between the ALJ and Plaintiff is as follows:
    Q: They both seem to be written by the same hand and are entirely the same. Words do vary to some degree.
    A: The statements were – we put them together, doctors and myself.
    Q: Okay. Did you pen them out and they signed them?
    A: I penned most of it, yes.
    Q: Okay.
    A: We were going along step-by-step.
[R. 39-40.]

consultation with them about the content. Crucially, as Plaintiff astutely points out, Plaintiff's treaters signed off on these statements, indicating that the opinions therein represented the doctor's opinions. The ALJ appears to insinuate that this is not the case, which is indeed a serious accusation. *See Jenkins v. Berryhill*, 2018 WL 4354311, at *3 (N.D. Okla. July 10, 2018), report and recommendation adopted, 2018 WL 4179073 (N.D. Okla. Aug. 31, 2018) (where treaters signed forms indicating answers therein represented their opinions, "[t]he ALJ's conclusion that the doctors submitted forms that did not represent their independent medical opinions is a serious accusation against the doctors and it concerns the court that the ALJ would make such an accusation without identifying substantial evidence to back up the accusation."). On remand, the Court cautions the ALJ to treat this issue with extra care, as the Court is not persuaded from the record there is even a hint of impropriety surrounding this issue as the ALJ has implied.

**IV. Conclusion**

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. At this time, the Court offers no opinion as to the other alleged bases of error in the ALJ's decision as raised by Plaintiff. Plaintiff's motion for summary judgment [dkt. 15] is GRANTED and the Commissioner's motion for summary judgment [dkt. 28] is DENIED.

Entered: 4/19/2021

_____
Susan E. Cox,
United States Magistrate Judge